UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BRYAN P. JONES,

       Plaintiff,

vs.                                           Case No: 3:13-cv-837-J-99MMH-MCR

SALLIE MAE, INC.,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss or to Stay Proceedings and Compel Arbitration (Doc. 4) filed July 24, 2013. On August 14, 2013, Plaintiff filed his response in opposition to this Motion. (Doc. 5). After obtaining permission, Defendant filed a Reply (Doc. 8) on August 30, 2013. On September 5, 2013, Judge Howard referred the Motion to the undersigned for preparation of a Report and Recommendation. (Doc. 9). Accordingly, the matter is now ripe for judicial review.

### I. BACKGROUND

On June 20, 2013, Plaintiff filed the Complaint in this case in state court alleging violations of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq* (the "FCCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (the "TCPA). (Doc. 2). Defendant removed the action to this Court and filed the instant

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

motion seeking to have the case dismissed for lack of subject matter jurisdiction or in the alternative, stayed and arbitration compelled.

In its Motion to Dismiss, Defendant takes the position that Plaintiff agreed to arbitrate the instant dispute and therefore, asks the Court to dismiss the case and compel Plaintiff to submit his claims to binding arbitration. In support of its Motion to Dismiss, Defendant provided an affidavit from Lori A. Ungvarsky, Defendant's Customer Advocate. Ms. Ungvarsky explained that Defendant is in the business of servicing student loans and that on August 27, 2007, Plaintiff submitted an executed Tuition Answer Loan Application and Promissory Note to Defendant. (Doc. 4, Ex. 1). A copy of the Tuition Answer Loan Application and Promissory Note is attached to Ms. Ungvarsky's affidavit.

The Tuition Answer Loan Application and Promissory Note is essentially a packet of information consisting of (1) the loan application itself, (2) a three-page document explaining the loan, and (3) the Promissory Note. The loan application, which bears Plaintiff's signature, is simply an application filled out by Plaintiff and directly above the signature line contains a Notice to Customer, which includes the following warning: "Do not sign this before you read the Promissory Note even if otherwise advised." (Doc. 4, Ex. 1, p.5). Additionally, it states: "I declare that the information provided above is true and complete to the best of my knowledge and belief. I have read and agree to the terms of the Promissory Note accompanying this application." Id. Finally, directly above Plaintiff's signature is the following provision:

> Promise to pay: Jointly and severally with the other signers below, I promise to pay the lender or any other holder of this loan all sums disbursed under the terms of the Promissory Note, plus interest and all other charges that may become

> due. The terms and conditions set forth in the Promissory Note constitute the entire agreement between us.
>
> **CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

(Doc. 4, Ex. 1, p.5) (emphasis in original).

On page 9 of the Promissory Note is the Arbitration Agreement, which states in relevant part:

> To the extent permitted under federal law, you and I agree that either party may elect to arbitrate – and require the other party to arbitrate – any Claim under the following terms and conditions. This Arbitration Agreement is part of the Tuition Answer Loan Promissory Note **("Note")**.
>
> **1. RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a rejection notice to P.O. Box 147027, Gainesville, FL within 60 days after the date of my first disbursement. Any Rejection Notice must include my name, address, telephone number and loan or account number.**
>
> **2. IMPORTANT WAIVERS AND WARNING: If you or I elect to arbitrate a Claim, you and I both waive the right to: (A) have a court or a jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE CLASS MEMBER OR OTHERWISE, OR ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION (THE "<u>CLASS ACTION WAIVER</u>"); (3) join or consolidate Claim(s) with claims involving any other person; or (4) obtain information except as provided herein. Other rights are more limited in arbitration than in court or are not available in arbitration.**

(Doc. 4, Ex. 1, §S, ¶6) (emphasis in original). Ms. Ungvarsky testified that no rejection notice was ever received from Plaintiff or anyone acting on his behalf.

In his response to the instant Motion, Plaintiff submitted an affidavit in which he stated he did not recall receiving or reviewing any promissory note containing an

Arbitration Agreement from Defendant. (Doc. 5). Plaintiff also alleged he did not agree to such a provision. Id. Finally, Plaintiff alleged he did not recall any application he may have signed having an Arbitration Agreement attached to it. Id. Accordingly, Plaintiff takes the position that he never agreed to arbitrate any dispute with Defendant. Additionally, Plaintiff argues the Arbitration Agreement is unconscionable because it is a contract of adhesion and because it requires him to give up legal remedies to which he would otherwise be entitled. Further, Plaintiff claims the arbitration clause is unenforceable because it defeats the remedial purposes of the FCCPA and is impossible to perform. Finally, Plaintiff claims Defendant waived its right to compel arbitration by removing the action to federal court. The Court will examine each of these arguments.

## II. ANALYSIS

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of covered arbitration agreements. "The FAA embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted). As provided by the Act, when a party moves a court to compel arbitration pursuant to an arbitration agreement:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. . . .

9 U.S.C. § 4. Through this provision, Congress expressly assigned the duty of deciding issues concerning the "making of the arbitration agreement" to the courts. Id.

In ruling on a motion to compel arbitration, courts consider three factors: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." Florida Farm Bureau Ins. Companies v. Pulte Home Corp., No. 8:04-cv-2357, 2005 WL 1345779, at *3 (M.D. Fla. June 6, 2005). In the present case, Plaintiff raises issues with respect to only the first and third factors, however, the Court will examine each of the factors.

### A. Whether a Valid Arbitration Agreement Exists

Plaintiff takes the position that no valid agreement to arbitrate exists because he was never made aware of the Arbitration Agreement contained in the Promissory Note. Additionally, Plaintiff argues even if there is an agreement, it is not valid because it is unconscionable, unenforceable, and/or impossible to perform.

### 1. Did Plaintiff Assent to the Arbitration Agreement?

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588 (2002) (quoting AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415 (1986)). Accordingly, when asked to compel arbitration, the Court's first step should be to decide the preliminary issue of whether the parties agreed to arbitrate their dispute. Chastain v. Robinson–Humphrey Co., Inc., 957 F.2d 851, 853–56 (11th Cir. 1992).

The FAA establishes a "federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25; see also Ruby-Collins, Inc. v. City of Huntsville, Ala., 748 F.2d 573, 576 (11th Cir. 1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration."). However, when determining whether a valid arbitration agreement exists, the court must consider both the federal policy favoring arbitration agreements as well as applicable state contract law. As the Eleventh Circuit has explained:

> in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.

Caley, 428 F.3d at 1367-68 (citations and quotation marks omitted).

To prove the existence of a contract under Florida[2] law, the party seeking to enforce the contract must prove three elements: "'offer, acceptance, consideration and sufficient specification of essential terms.'" Schoendorf v. Toyota of Orlando, 6:08-cv-767, 2009 WL 1075991 (M.D. Fla. Apr. 21, 2009) (quoting St. Joe Corp. v. McIver, 875 So.2d 375, 381 (Fla. 2004)). Here, Plaintiff takes issue with the element of acceptance. Plaintiff argues he "never assented to be bound by the Arbitration Agreement" because he did not review the Promissory Note and cannot recall receiving the Note.[3]

In Florida, "where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as

---

[2] Both parties agree Florida law contract law applies.
[3] Plaintiff does not go so far as to assert that he did not receive the Note, but simply that he cannot recall receiving it.

part of the writing." OBS Co., Inc. v. Pace Const. Corp., 558 So. 2d 404, 406 (Fla. 1990) (citing J.M. Montgomery Roofing Co. v. Fred Howland, Inc., 98 So.2d 484 (Fla.1957); United States Rubber Products v. Clark, 145 Fla. 631, 200 So. 385 (1941); and McGhee Interests v. Alexander National Bank, 102 Fla. 140, 135 So. 545 (1931)). The Loan Application signed by Plaintiff expressly refers to the Promissory Note and indeed, cautions borrowers not to sign until they have read the Promissory Note. Further, the Loan Application states that by signing, the borrower is declaring that he/she has "read and agree[s] to the terms of the Promissory Note accompanying this application." Finally, directly above Plaintiff's signature, the application states "[t]he terms and conditions set forth in the Promissory Note constitute the entire agreement between us." Accordingly, the Court is satisfied that the Promissory Note and the Arbitration Agreement contained therein should be treated as part of the Loan Agreement signed by Plaintiff.

Florida law also provides that "'[a] party who signs an instrument is presumed to know its contents. . . . He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions.'" Linville v. Ginn Real Estate Co., LLC, 697 F.Supp.2d 1302, 1308–09 (M.D. Fla. 2010) (quoting Benoay v. E.F. Hutton & Co., Inc., 699 F.Supp. 1523, 1529 (S.D .Fla. 1988)). Accordingly, Plaintiff's allegations that he cannot recall receiving, reviewing, or agreeing to the provisions in the Promissory Note are not persuasive. Plaintiff's signature on the Loan Application is evidence that he received the Promissory Note and read it. His failure to recall receipt, without more, is not sufficient to create a jury issue. See Sultanem v. Bright House Networks, L.L.C., No.

8:12-cv-1739-T-24, 2012 WL 4711963, *2 (M.D. Fla. Oct. 3, 2012) (holding plaintiff's denial of receipt of arbitration agreement alone not sufficient to create issue of fact as to existence of arbitration agreement where plaintiff signed work orders acknowledging agreement containing arbitration clause); Dorward v. Macy's Inc., No. 2:10-cv-669-FTM-29, 2011 WL 2893118, *11 (M.D. Fla. July 20, 2011) (holding that the plaintiff's signature on a new hire acknowledgment form, which referred to a brochure containing the arbitration agreement, was sufficient to show the plaintiff assented to the arbitration agreement and "Plaintiff's alleged ignorance of the contents of [the brochure] ha[d] no bearing on her duty to arbitrate according to its terms").  Accordingly, the undersigned finds Plaintiff assented to the Arbitration Agreement.

**2. Is the Arbitration Agreement Unconscionable?**

As the undersigned finds Plaintiff assented to the Arbitration Agreement, it must now turn to Plaintiff's argument that the agreement is not valid because it is unconscionable.  As an initial matter, the Court notes that "[t]he party seeking to avoid the arbitration provision has the burden to establish unconscionability."  Murphy v. Courtesy Ford LLC, 944 So.2d 1131, 1134 (Fla. 3rd DCA 2006).  In order to determine whether a contract is unconscionable under Florida law, a court must examine the contract itself and the facts surrounding its making for both procedural and substantive unconscionability.  Murphy, 944 So.2d at 1134; Woebse v. Health Care & Retirement Corp. of America., 977 So.2d 630 (Fla. 2nd DCA 2008).

***a. The Arbitration Agreement Is Not Procedurally Unconscionable***

To determine whether a contract is procedurally unconscionable under Florida law, courts look to several factors:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract.

Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1135 (11th Cir. 2010). Here, Plaintiff argues the Arbitration Agreement is a contract of adhesion because Plaintiff did not have any meaningful choice regarding it. Plaintiff claims he was not even aware of the agreement or any opportunity to reject it. Further, Plaintiff states Defendant failed to make any effort to explain the Arbitration Agreement to Plaintiff or take any steps to ensure that Plaintiff read the agreement.

The Court is not persuaded by Plaintiff's arguments. As noted above, Plaintiff's claims that he was unaware of the Arbitration Agreement are negated by his signature on the Loan Application declaring that he had read and agreed to the terms of the Promissory Note. See Sabin v. Lowe's of Florida, Inc., 404 So.2d 772, 773 (Fla. 5th DCA 1981) (Florida law imposes upon a party the "duty to learn and know the content of a proposed contract before he signs and delivers it [as he] is presumed to know and understand its contents, terms and conditions."). Moreover, Plaintiff's allegation that Defendant did not make an effort to explain the Arbitration Agreement to Plaintiff or ensure that Plaintiff read the provision is not sufficient alone to show procedural unconscionability. See Rosier v. Safamarwa, Inc., No. 6:07-cv-159, 2007 WL 3202710 (M.D. Fla. Oct. 29, 2007) (holding "[p]laintiff's assertion that she does not recall seeing the member agreement, or having it explained to her does not create procedural unconscionability. Plaintiff may not 'rely on her ignorance of the company arbitration

policy to support a claim that the arbitration clause is procedurally unconscionable.'") (quoting Brasington v. EMC Corp., 855 So.2d 1212, 1218 (Fla. 1st DCA 2003)).

Finally and most importantly, Plaintiff's argument that he had no meaningful choice is belied by the "right to reject" clause contained in the Arbitration Agreement. On page 9 of the Promissory Note, in bold lettering, is the following provision:

> **1. RIGHT TO REJECT: I may reject this Arbitration Agreement by mailing a rejection notice to P.O. Box 147027, Gainesville, FL within 60 days after the date of my first disbursement. Any Rejection Notice must include my name, address, telephone number and loan or account number.**

(Doc. 4, Ex. 1, §S, ¶6) (emphasis in original). This right to reject the Arbitration Agreement within sixty days after receiving his first disbursement provided Plaintiff with a "meaningful choice" as the whether to accept the Arbitration Agreement and "vitiates any conceivable claim that the circumstances under which he initially signed the Agreement were procedurally unfair." Crewe v. Rich Dad Educ., LLC, 884 F.Supp.2d 60, 82 (S.D.N.Y 2012) (holding that agreement providing opportunity to cancel within three days was not procedurally unconscionable). Thus, the Court finds that the Arbitration Agreement is not procedurally unconscionable. Plaintiff's failure to make this showing precludes a finding of unconscionability as Florida law requires a showing of **both** procedural and substantive unconscionability. Golden v. Mobil Oil Corp., 882 F.2d 490, 493 (11th Cir. 1989) (emphasis added). However, in the interest of completeness, the undersigned will address Plaintiff's claims regarding substantive unconscionability.

### *b. The Arbitration Agreement Is Not Substantively Unconscionable*

Substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are "unreasonable and unfair." Powertel Inc. v.

Bexley, 743 So.2d 570, 574 (Fla. 1st DCA 1999).  A contract is substantively unconscionable if its terms "are so 'outrageously unfair' as to 'shock the judicial conscience.'"  Bhim v. Rent-A-Center, Inc., 655 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009) (quoting Gainesville Health Care Center, Inc. v. Weston, 857 So.2d 278, 285 (Fla. 1st DCA 2003)).  "In determining whether an agreement or provision is substantively unconscionable, courts consider whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes."  EEOC v. Taco Bell of Am., Inc., No. 8:06–cv–1792, 2007 WL 809660 at *1 (M.D. Fla. Mar. 15, 2007) (citing Palm Beach Motor Cars Ltd. v. Jeffries, 885 So.2d 990, 992 (Fla. 4th DCA 2004)).

Here, Plaintiff argues the Arbitration Agreement is substantively unconscionable because it requires him to give up "remedies that would otherwise be available to Plaintiff in litigation against [Defendant]."  (Doc. 5, p.5).  To support this claim, Plaintiff references the Arbitration Agreement's terms which state: "[o]ther rights are more limited in arbitration than in court or are not available in arbitration."  Id.  However, Plaintiff does not specify what rights he believes are more limited.  As it is Plaintiff's burden to show substantive unconscionability, his failure to identify specific rights defeats his claim of substantive unconscionability based simply on this language.

Plaintiff also points to the fact that the Arbitration Agreement eliminates his right to participate in a class action.  However, Plaintiff's argument that a class action waiver is inherently unconscionable under Florida law is foreclosed by the Supreme Court's decision in AT & T Mobility, LLC v. Concepcion, ___ U.S. ___, 131 S.Ct. 1740, 1748-51 (2011), which "approved of such waivers as advancing legitimate goals, including

facilitating lower costs, faster resolution, and eliminating procedural complexity." Crewe, 884 F.Supp.2d at 83; see also McKenzie Check Advance of Florida, LLC v. Betts, 112 So.3d 1176 (Fla. 2013) (citing Concepcion and holding that, to the extent Florida has held class action waivers void against public policy, such holdings are preempted by the FAA); and Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1207 (11th Cir. 2011) (same). Accordingly, Plaintiff has failed to demonstrate either procedural or substantive unconscionability.

### 3. Is the Arbitration Agreement Unenforceable?

Plaintiff also argues the Arbitration Agreement is unenforceable because it defeats the remedial purposes of the FCCPA. Specifically, Plaintiff points out that in addition to his claims for damages, he is seeking an injunction against Defendant "from continuing in its violations of the FCCPA." (Doc. 5, p.7). Plaintiff argues the Arbitration Agreement "does not clearly provide for the arbitrator to enter an injunction of a public nature, relief which the FCCPA specifically allows." Id.

There is no merit to Plaintiff's claim. As Defendant points out, the Arbitration Agreement specifically states:

> The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and **shall be authorized to award all remedies permitted by applicable substantive law, including**, without limitation, compensatory, statutory and punitive damages (subject to constitutional limits that would apply in court), declaratory, **injunctive and other equitable relief**, and attorneys' fees and costs.

(Doc. 4, Ex. 1, §S, ¶9) (emphasis added).

**4. Is the Arbitration Agreement Impossible to Perform?**

Finally, Plaintiff argues the Arbitration Agreement is not valid because it is impossible to perform. Plaintiff takes the position that because the Arbitration Agreement defines the administrator as either the American Arbitration Association (the "AAA") or the National Arbitration Forum (the "NAF") and the NAF has dissolved, the Arbitration Agreement is impossible to perform and therefore, unenforceable. This argument is untenable for numerous reasons. First, the Arbitration Agreement expressly defines the administrator as either the NAF or the AAA. Accordingly, the parties may use the AAA as the administrator and as such, the Arbitration Agreement is not impossible to perform.

To the extent Plaintiff argues the AAA cannot serve as administrator because it ceased taking debt-collection arbitration "until some standards or safeguards are established" (Doc. 5, p.8), the Court is not persuaded. As Defendant points out, a Notice on the ADR website indicates that the moratorium referenced by Plaintiff applies only to cases where the company is seeking to collect a debt and attempting to use arbitration as a means to do so. It appears the moratorium would not apply to the instant matter, which is an action brought by the consumer against the debt collector. See http://www.adr.org/cs/groups/governmentandconsumer/documents/document/dgdf/mdey/~edisp/adrstg_012244.pdf ("The AAA will continue to administer all demands for arbitration filed by consumers against businesses as well as all other types of consumer arbitrations.").

However, the Court need not determine whether the AAA is still available because even if both the NAF and AAA are unavailable, the Arbitration Agreement

would still not be impossible to perform.  As the Eleventh Circuit has observed, "Section 5 of the FAA provides a mechanism for appointment of an arbitrator where 'for any [ ] reason there shall be a lapse in the naming of an arbitrator . . .'"  <u>Brown v. ITT Consumer Financial Corp.</u>, 211 F.3d 1217, 1222 (11th Cir. 2000) (quoting  9 U.S.C. § 5 and holding that the "unavailability of the NAF does not destroy the arbitration clause")).  It is only in cases where the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" that the failure of the chosen forum will preclude arbitration.  <u>Id.</u>  In the instant case, like the <u>Brown</u> case, there is no evidence that the choice of the NAF or the AAA as the administrator was an integral part of the agreement to arbitrate.  Accordingly, Plaintiff's argument that the arbitration agreement is void because the NAF and/or the AAA are unavailable must fail and the undersigned believes the parties entered into a valid arbitration agreement.

### B.    **Whether an Arbitrable Issue Exists**

Having found that a valid written agreement to arbitrate exists, the undersigned will briefly examine whether an arbitrable issue exists despite Plaintiff's failure to argue otherwise.  The Arbitration Agreement expressly covers:

> any legal claim, dispute or controversy between [the parties] that arises from or relates in any way to the Note, . . .  This includes, without limitation, disputes concerning the validity, enforceability, arbitrability or scope of this Arbitration Agreement or the Note; disputes involving alleged fraud or misrepresentation, breach of contract, negligence or **violation of statute**, regulation or common law; **and disputes involving requests for injunctions** or other equitable relief. . .

(Doc. 4, Ex. 1, §S, ¶4) (emphasis added).  As Plaintiff's claims in the present litigation involve allegations of statutory violations as well as a request for an injunction, it is clear that the present litigation would be covered by the Arbitration Agreement.

### C.     Whether the Right to Arbitrate was Waived

Finally, Plaintiff argues Defendant waived the right to arbitrate.  "A party may be deemed to have waived its right to arbitrate a dispute 'when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'"  Stone v. E.F. Hutton & Co., Inc., 898 F.2d 1542, 1543 (11th Cir. 1990) (citation omitted).  Plaintiff believes Defendant's conduct in removing the case from state court to this Court is enough to show Defendant waived its right to arbitrate.  The Court does not agree.

Plaintiff filed the instant litigation in state court on June 20, 2013.  Slightly over one month later, Defendant filed the instant motion to compel arbitration.  In between those two events, Defendant merely removed the case to this Court.  Such conduct is not enough to substantially invoke the judicial process to the detriment or prejudice of Plaintiff.  See Gimenez v. American Sec. Ins. Co., 8:08-cv-2495, 2009 WL 257540 (M.D. Fla. Feb. 3, 2009) (finding no waiver where the defendant removed action to federal court, filed an answer, made initial disclosures, and participated in case management and scheduling negotiations prior to seeking to compel arbitration); Losapio v. Comcast Corp., 1:10-cv-3438, 2011 WL 1497652 (N.D. Ga. Apr. 19, 2011) ("despite Plaintiff's contention, removing a case to federal court does not waive the right to arbitrate the dispute"); Lawrence v. Household Bank (SB), N.A., 343 F.Supp.2d 1101, 1113 (M.D. Ala. 2004) (arbitration not waived where defendants "moved to compel arbitration shortly after removing [their] case to federal court and before any litigation activity occurred"); and Goff Group., Inc. v. Greenwich Ins. Co., 231 F. Supp. 2d 1147, 1155 (M.D. Ala. 2002) ("this court refuses to find that removal of a case to federal court,

standing alone, constitutes waiver of a party's right to compel arbitration"). Accordingly, Defendant has not waived its right to arbitrate the present dispute.

### III. CONCLUSION

For the foregoing reasons, the Court must compel arbitration.[4] 9 U.S.C. § 4; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

Accordingly, after due consideration, it is respectfully

**RECOMMENDED**:

1. Defendant's Motion to Dismiss or to Stay Proceedings and Compel Arbitration (Doc. 4) be **GRANTED** to the extent that Plaintiff's claims should be submitted to arbitration and the case should be stayed pursuant to 9 U.S.C. §3. To the extent Defendant seeks to have the case dismissed, the Motion should be **DENIED**.

2. The case be **STAYED** pending notification by the parties that they have completed the arbitration process and the stay is due to be lifted or the case is due to be dismissed.

3. The parties be **ORDERED** to file a joint status report with the Court every ninety (90) days until the matter is resolved.

4. The Clerk be **DIRECTED** to terminate all deadlines and motions, and to stay the case.

---

[4] The undersigned does not believe dismissal of the case due to the arbitrability of Plaintiff's claims, as Defendant requests, is appropriate. Rather, the undersigned recommends the case be stayed pending the resolution of the arbitration proceedings consistent with the terms of 9 U.S.C. §3.

**DONE** and **ENTERED** in Jacksonville, Florida this   20th   day of September, 2013.

                                                  MONTE C. RICHARDSON
                                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Marcia Morales Howard
United States District Judge,

Counsel of Record